IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| YVONNE BAUTSCH ADAMS § | |
| DEBTOR(S) § | CASE NO. 05-36644-H5-7 |
| § | |
| JACQUELINE HARRIS § | |
| PLAINTIFF(S) § | ADVERSARY NO. 05-3556 |
| § | |
| VS. § | |
| § | |
| YVONNE ADAMS § | |
| DEFENDANT(S) § | |

**MEMORANDUM OPINION
REGARDING PLAINTIFF'S FIRST AMENDED COMPLAINT
TO DETERMINE DISCHARGEABILITY**

Before the Court is the first amended complaint of Jacqueline Harris to determine dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(6). This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding. Following a trial, this Court concludes that the complaint must be denied and the debt discharged.

**I. Facts**

Prior to filing this Chapter 7 bankruptcy case, debtor operated an auto trim repair business under the name, Adams Auto Trim, at 2222 Studewood, Houston,

Harris County, Texas 77009. In February 2005, Jacqueline Harris brought her restored and customized 1970 Plymouth Fury III convertible to debtor's shop for minor repairs. The car had been repaired previously at the Adams Auto Trim shop. Harris testified that she had invested fifty to sixty thousand dollars in enhancements to the car.

On February 12, 2005, the Sugar Land, Texas Police Department informed Harris that her car had been found abandoned in a field. The car's windshield was smashed; the engine and transmission were ruined; the fenders, trunk, and bumper were dented; and the paint was scratched. The car had been driven in "donuts" on the field. The car was found in a ditch "bottomed out." Harris testified that repairs to restore the car to the condition it was when left with debtor will cost at least $30,000.[1]

Debtor's forty-six-year-old son, Greg Bautsch, was arrested and served seven months in jail for his unauthorized use of Harris' vehicle. Bautsch has a history of drug addiction and violent conduct. Most recently, he has been convicted of vehicular assault of his girlfriend.

Debtor is seventy-two years old and has three children: her oldest son who is an orthodontist, her daughter who works at a church, and Bautsch. Debtor worked

---

[1] The car remains unrepaired because Harris does not have the necessary funds and debtor did not maintain insurance coverage for customer claims.

for Southern Pacific for seventeen years, as a bookkeeper at a private club, and as owner of an army surplus store for eight years. Subsequently, she has operated Adams Auto Trim Shop for some years. After the closing of that business, debtor's source of income has been Social Security.

While she operated the auto trim shop, debtor employed Bautsch to work at her shop. At the time Harris brought her car into the shop, debtor was allowing him to live in a trailer on the grounds of the business.

A neighbor, Daniel Galvan, testified that he had seen Bautsch, his girlfriend, and Bautsch's friends drive debtor's customers' cars numerous times. Galvan testified that he has helped debtor locate customers' cars loaned by her son to his friends. Nevertheless, Galvan testified that debtor always made excuses for her son's behavior.

Debtor testified that she usually took all of her customers' car keys from the shop at closing time, but neglected to do so on the evening Harris' car was taken. Debtor took the keys off the key board to prevent Bautsch from using the cars. Debtor testified that Bautsch would sometimes take cars to buy cigarettes, but denied that he would remove the cars for other reasons.

At trial debtor admitted that Bautsch is an uncontrollable person, who in the past had threatened her with physical injury. Debtor contended that, despite his

threats, he had never actually assaulted her. Debtor testified that she had called the police about her son's behavior many times, butthat whenever he hads been picked up,, he hads always been released the next day. Debtor described her son as a "rebel."

Based on debtor's testimony and demeanor, this Court concludes that debtor rejects all criticism or blame of Bautsch, despite his evident danger to debtor and to others. Her testimony with regards to Bautsch reflects complete self-delusion.

Based on the damage to Harris' car, Dennis Wilson, a car mechanic, testified that repairs will cost approximately thirty to fifty thousand dollars and that it will take approximately six to eight months to find the necessary parts. The Court finds that the testimony from Wilson and Harris is sufficient to prove thirty thousand dollars as a reasonable cost of repair of the Plymouth Fury. Fed. R. Evid. 701.

## II. Section 523(a)(6)

Harris contends that debtor knew or had reason to know that her conduct – allowing Bautsch to live on the premises, allowing him access to vehicles, and turning a blind eye to his dangerous conduct--would lead to serious damage to customer property such as Harris' car. The Supreme Court in <u>Kawaauhau, v. Geiger</u>, 523 U.S. 57 (1998) held that debts arising from recklessly or negligently inflicted injuries are not within the willful and malicious injury exception to discharge. 523 U.S. 57, 118 S.Ct. 974. Plaintiffs had obtained a judgment against Dr. Geiger for

malpractice. Rejecting the plaintiff's' contention that "willful and malicious injury" includes acts done intentionally that cause injury, the Supreme Court held that the word "willful" in (a)(6) modified "injury," and concluded that the exception to discharge required proof that debtor intended the consequences of the act itself. Id. at 61.

In Miller v. J.D. Abrams, Inc. (In re Miller), 156 F.3d 598, 603 (5th Cir. 1998), the Fifth Circuit extended Kawaauhau. Concluding that the Supreme Court's ruling in Kawaauhau had displaced the Fifth Circuit's prior interpretation of "malicious" as "without just cause or excuse," the Miller court adopted an "implied malice" standard which it found to be "synonymous with the Kawaauhau standard for "willful injury," "acts done with the actual intent to cause injury,"" and held that an injury is "willful and malicious" where there is either an objective substantial certainty of harm or a subjective motive to cause harm. 156 F.3d 598 at 606.

In addition, the Miller court concluded that Kawaauhau had left unchanged the Fifth Circuit's ruling in In re Delaney, 97 F. 3rd 800, (5th[th] Cir. 1996). Miller, 156 F.3d 598 at 603. In Delaney, the plaintiff sought to avoid the discharge of a judgment he had obtained for damages he sustained when he was shot by the debtor while seated as a passenger in a car in the debtor's driveway. 97 F.3d 800 at 801. While the debtor had intentionally loaded, carried, and aimed at plaintiff through the car's

windshield, the gun had discharged accidentally when the debtor, with his finger on the trigger, twice tapped the gun barrel on the windshield of the car. Id. Holding the debt discharged, the Fifth Circuit concluded that "for willfulness and malice to prevent discharge under § 523(a)(6), the debtor must have intended the actual injury that resulted." Id. at 802.

While the evidence gives rise to liability on debtor's part for breach of contract, this Court cannot conclude that plaintiff has borne her burden of proof to show by a preponderance of the evidence that debtor Yvonne Adams, intended to injure plaintiff's vehicle. See Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654 (1991). Debtor's actions certainly were irresponsible and had the unintended result that Bautsch damaged the car. However, as noted by the Fifth Circuit in Delaney, "for willfulness and malice to prevent discharge under § 523(a)(6), the debtor must have intended the actual injury that resulted....[I]ntent to injure may be established by showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury." Delaney, 97 F.3d at 802.

Similarly, plaintiff fails to show that debtor's careless omission to remove the Plymouth Fury keys was done with a "substantial objective certainty" that Greg Bautsch would severely damage plaintiff's vehicle. In re Gagle, 230 B.R. 174, 183 (Bankr. Utah 1999) (While husband's willful and malicious conversion by selling

truck parts was not dischargeable under § 523(a)(6), wife's acquiescence in husband's acts did not meet the "willful and malicious" requirements of § 523(a)(6)).[2] Based on the foregoing, it is

**ORDERED** that the debt owed by Yvonne Bautsch Adams to Jacqueline Harris is **DISCHARGED.**

Signed this 29th day of August, 2006 at Houston, Texas.

KAREN K. BROWN
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[2]To the extent that Harris contends that debtor, as the parent of and the employer of Bautsch, has vicariously committed a willful and malicious injury, case law holds that vicarious liability is an insufficient basis for "willful and malicious injury" under § 523(a)(6). See e.g., In re Tomasek, No. 05-10777, 2006 WL 925536 (5th Cir. April 7, 2006) (unpublished); In re Miller, 196 B.R. 334 (Bankr. E.D. La. 1996); In re Albano, 143 B.R. 323 (Bankr.D.Conn.1992); In re Whitacre, 93 B.R. 584 (Bankr.N.D.Ohio 1988).